# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARTIN H.[1], <br><br>    Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br>    Defendant. | Case No. 6:18-cv-1076-SI <br><br> **OPINION AND ORDER** |

Katherine L. Eitenmiller and Brent Wells, HARDER WELLS BARON & MANNING PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Martin H. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB"). After Plaintiff filed his opening brief, the Commissioner conceded error and moved for an order remanding for further administrative proceedings. Plaintiff replied, arguing that the Court should remand this case for a finding of disability and the payment of benefits. For the reasons stated below, the Court remands for a finding of disability and the payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB in May 2014, alleging disability beginning January 2, 2014. AR 161. Plaintiff was born on January 27, 1965 and was 48 years old on the alleged disability onset date. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 103-07, 112-28. He appeared for a hearing before Administrative Law Judge ("ALJ") Mark Triplett in November 2016. AR 34-80. On March 6, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 16-33. Plaintiff requested review of the hearing decision, which the Appeals Council denied in April 2018. AR 1. Accordingly, the ALJ's decision became the final decision of the agency. Plaintiff now seeks judicial review of the agency's final decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements under Title II through December 31, 2019 and proceeded to the sequential analysis. AR 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2, 2014, the alleged onset date. AR 21. At step two, the ALJ found Plaintiff had the following severe impairments: obesity and ligament injury in the shoulder, knee, and ankle. AR 21-22. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. AR 22. Between step three and step four, the ALJ formulated Plaintiff's RFC. The ALJ found that Plaintiff could perform a range of light work, specifically:

> [T]he claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for six hours out of an eight-hour workday with regular breaks. The claimant can sit for six hours out of an eight-hour workday with regular breaks. The claimant is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. The claimant is limited to no more than occasional climbing of

> ladders, ropes or scaffolds and no more than occasional kneeling, crouching and crawling.

*Id.* At step four, the ALJ found Plaintiff unable to perform his past relevant work as a package deliverer. AR 26. At step five, the ALJ found that Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy. AR 27. Thus, the ALJ found that Plaintiff was not disabled. AR 27-28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) not accounting for all of Plaintiff's supported limitations in his RFC; (2) improperly rejecting the "non-acceptable" medical source opinion of Janet Kadlecik, Registered and Licensed Occupational Therapist ("OTR/L"); (3) improperly rejecting the "acceptable" medical source opinion of Dr. Timothy Quiner; (4) improperly rejecting Plaintiff's subjective symptom testimony; and (5) improperly rejecting the lay witness testimony of Plaintiff's spouse. Because issues (2) and (5) are dispositive, the Court will not address issues (1), (3), and (4). The Commissioner concedes that the ALJ erred in rejecting Plaintiff's subjective symptom testimony and the lay witness testimony of Plaintiff's wife. ECF 28 at 4. The Court considers whether the ALJ improperly rejected Ms. Kadlecik's testimony and whether to remand the case for further proceedings (as the Commissioner argues) or for payment of benefits (as Plaintiff argues).

### A. "Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* Said otherwise,

> the district court must consider the testimony or opinion that the ALJ improperly rejected, *in the context of the otherwise undisputed record*, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true.

*Id.* (emphasis added). If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and need not credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

B. Analysis

   1. Harmful Legal Error

The Commissioner concedes that the ALJ committed harmful legal error by rejecting the lay witness testimony of Plaintiff's wife.[2] ECF 28 at 4. The Court also finds that the Commissioner committed harmful legal error by improperly rejecting the medical source opinion of Ms. Kadlecik.

Social Security Rule ("SSR") 06-03p in effect when Plaintiff filed his claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Ms. Kadecik is a Registered and Licensed Occupational Therapist, she is a "non-acceptable," or "other," medical source.

An ALJ may not reject the competent testimony of "non-acceptable" or "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ must give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the

---

[2] The Commissioner also concedes that the ALJ erred by rejecting Plaintiff's subjective symptom testimony for an improper reason. The Court need not reach that issue because the opinion testimony of Ms. Kadlicek and Plaintiff's spouse is dispositive.

source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." 20 C.F.R. §§ 404.1512(b)(v), 416.912(b)(v).

After applying the factors for weighing "other" medical opinion evidence, an ALJ may properly find that an opinion from "non-acceptable medical source" outweighs the opinion of the "acceptable medical source."

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.*

Ms. Kadlecik examined Plaintiff in December 2016. She catalogued Plaintiff's physical impairments in her eight-page report. After diagnosing Plaintiff with a litany of physical conditions (including left shoulder burstitis and right knee meniscal tear with partial meniscectomy, among others, AR 478), Ms. Kadlecik opined that Plaintiff could work only part time and only with accommodations at his work station. AR 483. Ms. Kadlecik identified several specific limitations to support this opinion. She opined that Plaintiff could stand for two hours out of an eight-hour work day, could walk for no more than one to three hours out of an eight-hour work day, and would not be able to perform any jobs that required high performance in fingering or handling. *Id.* Additionally, she noted that Plaintiff would have trouble sitting for more than 45 minutes at a time and standing for more than 30 minutes at a time. Separately, Ms. Kadlecik believed that the pain from Plaintiff's ailments would prevent him from focusing

PAGE 9 – OPINION AND ORDER

on functional work tasks. AR 478. Ms. Kadlecik concluded that Plaintiff would have trouble sustaining or engaging in gainful employment in either light or medium work. AR 483. She also opined that Plaintiff's impairments would result in absenteeism of more than five workdays per month. *Id.*

The ALJ gave Ms. Kadlecik's opinion "little weight." AR 25. The relevant question is whether the ALJ provided germane reasons for discounting Ms. Kadlecik's opinions. The ALJ reasoned *only* that this evidence was due "less weight than other qualifying medical source opinions" because Ms. Kadlecik was not an "acceptable medical source." *Id.* The mere fact that a medical source is not an "acceptable" medical source is not a germane reason to reject their opinion. Indeed, "an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source." 20 C.F.R. § 404.1527(f). Further, the agency regulations outline specific factors for ALJs to consider when weighing non-acceptable medical source opinions, *see* 20 C.F.R. §§ 404.1512(b)(v), 416.912(b)(v), none of which the ALJ addressed here. These factors support Ms. Kadlecik's medical opinion—Dr. Stanley (whose opinion the ALJ afforded "great weight") ultimately concurred with Ms. Kadlecik's opinion. AR 486, 489. Ms. Kadlecik noted specific physical conditions underlying her findings, explained why the evidence supported her findings, and is a specialist in physical therapy, a relevant area of expertise. AR 479-87.

2. **Fully Developed Record Free from Conflicts and Ambiguities and Utility of Further Proceedings**

   a. **Ms. Kadlecik's Medical Source Opinion**

Plaintiff submitted additional post-hearing evidence from Dr. Stanley (an examining physician) agreeing with Ms. Kadlecik's assessment of Plaintiff. The Commissioner argues that the additional post-hearing evidence requires further proceedings to allow the ALJ to re-evaluate

"the record in its entirety." ECF 28 at 7. Plaintiff responds that the post-hearing evidence does not affect "the analysis of the medical record as a whole, including the medical opinions from Drs. Stanley and Quiner and Ms. Kadlecik." *Id.* Plaintiff's argument is more persuasive.

The record—viewed both with and without Dr. Stanley's addendum agreeing with Ms. Kadlecik's opinion—is free from contradictions. The record at the hearing shows that Dr. Quiner and Dr. Stanley examined Plaintiff and that neither Dr. Quiner nor Dr. Stanley felt capable of evaluating the severity of Plaintiff's physical impairments, but Dr. Quiner deferred to Dr. Stanley on the issue. AR 430. The record also shows that Dr. Stanley, still unsure of the severity of Plaintiff's physical impairments, referred Plaintiff to Ms. Kadlecik. AR 477. Indeed, Dr. Stanley made this referral because he specifically stated that he did not know the extent of Plaintiff's physical limitations. AR 429-32. As discussed above, the ALJ erred by rejecting Ms. Kadlecik's medical source opinion simply because she was a "non-acceptable medical source." Dr. Stanley's post-hearing approval of Ms. Kadlecik's opinion does not change the ALJ's error or introduce any ambiguities, especially because Dr. Stanley admitted his limitations and recommended occupational therapy in the first place, essentially deferring to Ms. Kadlecik.

The Commissioner, however, argues, without support, that the ALJ rejected Ms. Kadlecik's opinion "in light of" Dr. Stanley's medical source opinion. ECF 28 at 4-5. Nothing in the ALJ's decision supports that reading. The Commissioner offers no cogent explanation for how Dr. Stanley's post-hearing concurrence affects, to Plaintiff's detriment, the analysis of other evidence in the record such as the medical testimony of Ms. Kadlecik and Dr. Quiner. In fact, Dr. Stanley's post-hearing concurrence with Ms. Kadlecik's opinion does not contradict the record at the hearing—it strengthens Plaintiff's case. Thus, the Court credits Ms. Kadlecik's medical source opinion as true.

### b. Lay-Witness Testimony of Plaintiff's Wife

Plaintiff's wife also testified to Plaintiff's physical limitations. She noted that Plaintiff experienced constant pain while sitting and walking, and that the pain affected his ability to pay attention and complete tasks. AR 225, 230. Plaintiff had to alternate between sitting and lying down to relive the pain. AR 226. Plaintiff reportedly could do household chores for only 30 minutes at a time, and his wife had to help him put on his socks and shoes. AR 226-27. During the day, he engaged in activities that required no physical exertion like watching television, going on the computer, and reading. AR 229.

The ALJ rejected this lay testimony because it was "only partially supported by the medical evidence of record." AR 26. The Commissioner concedes that the ALJ erred by rejecting the lay testimony of Plaintiff's wife for this reason but argues that Dr. Stanley's post-hearing concurrence necessarily implicates the assessment of the lay testimony of Plaintiff's wife. The Commissioner, however, does not specify *how* it implicates that lay testimony, especially because Dr. Stanley ultimately concurred with Ms. Kadlecik's opinion, which itself was consistent with the levels of impairment described by Plaintiff's wife. The Court agrees with Plaintiff that Dr. Stanley's post-hearing concurrence has no effect on the lay witness statements, and certainly not any adverse effect on Plaintiff's case. Thus, the Court credits the lay witness statements of Plaintiff's spouse as true.

### 3. Required Finding of Disability

The Commissioner also argues that "the ALJ as fact-finder needs to review the record in its entirety in context with the new evidence submitted post-decision." ECF 28 at 8. Not so here, because the record before the ALJ—without Dr. Stanley's later concurrence—demonstrated that Plaintiff was disabled during the period at issue. Taking the improperly rejected evidence as true, the record supports a finding of disability. Ms. Kadlecik opined that Plaintiff would miss four to

five days of work a month. AR 483. The Vocational Expert testified that such absences would preclude competitive employment, supporting a disability finding. AR 78. Ms. Kadlecik also described Plaintiff's severe physical limitations. Properly credited, Ms. Kadlecik's opinion states that Plaintiff cannot maintain full-time light work, and given his age and employment history, is therefore disabled under Rule 201.12 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. AR 483. The lay testimony of Plaintiff's wife requires a finding of disability for a similar reason—it demonstrates that Plaintiff is limited to a sedentary level of exertion.

### 4. Serious Doubt as to Plaintiff's Disability

The Commissioner nonetheless argues that "an evaluation of the record as a whole creates serious doubt that [Plaintiff] is, in fact, disabled." *Garrison*, 759 F.3d at 1021. "Serious doubt" may exist when "the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled," even if the ALJ did not consider that evidence at the hearing. *Dominguez*, 808 F.3d at 407 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). The only additional evidence here—Dr. Stanley's post-hearing concurrence with Ms. Kadlecik's opinion—supports Plaintiff's disability claim. Thus, the record does not create "serious doubt" that Plaintiff is disabled.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge